Rebekah Schultheiss (Millard)
rebekah@millardoffices.com
OSB #121199
PO Box 7582
Springfield, OR 97475
t: 707.227.2401
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **JESSICA BATES,**<br><br>                                   Plaintiff,<br><br>v.<br><br>**FARIBORZ PAKSERESHT**, *et al.,*<br><br>                                   Defendants. | Case No.: 2:23-cv-00474-AN<br><br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF** |

### ARGUMENT

*Backlund v. Barnhart* is inapposite to this case for at least six reasons. 778 F.2d 1386 (9th Cir. 1985).

***First***, *Backlund* was about an alleged free-exercise right to parent a specific child in a specific way. *Id.* at 1389. But Bates seeks to participate in a government program on an equal playing field, without being categorically excluded at the door simply because of who she is and what she believes.

States "may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech," or freedom of religion, "even if he has no entitlement to that benefit." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (cleaned up). So in *Fulton v. City of Philadelphia*, the

Catholic adoption agency had no right to receive a government contract. 141 S. Ct. 1868, 1878 (2021). But it was "plain that the City's actions … burdened" the agency's religious exercise. *Id.* at 1876. And in *Trinity Lutheran Church of Columbia, Inc. v. Comer,* the church did not assert a right to receive the government funding grant. 582 U.S. 449, 455 (2017). But the Court still applied strict scrutiny because the injury was "not the denial of a grant," but the categorical exclusion "solely because it is a church." *Id.* at 463. And in *Blais v. Hunter,* the court did not require Washington to certify the plaintiff couple. 493 F. Supp. 3d 984, 1002 (E.D. Wash. 2020). But the court still affirmed that Washington could not exclude them at the door. *Id.*

Similarly here, Bates does not assert a right to adopt or to parent a specific child. Nor does Bates "demand that the state create a caregiving role for her as a medium through which to express and exercise [her] beliefs on children who are in state custody." Defs.' Suppl. Br. Regarding Pl.'s Mot. for Prelim. Inj. 4 (Defs.' Suppl. Br.) (Doc. 43). Bates merely asserts a right to be considered for certification without being *categorically* labeled unfit to parent based on her religious beliefs or protected speech. In this way, neither *Backlund* nor Oregon's other cited cases (*id.* at 3 n.1) address the central question in this case: do government child-welfare agencies operate outside of the Constitution? Put another way, could a different state categorically exclude applicants who teach their children critical-race theory or take their children to Pride parades? Surely the answer is "no."

**Second**, as Defendants concede, "the result in *Backlund* turned on the defendants' qualified immunity." Defs.' Suppl. Br. 2. But a case about rights *clearly established* in 1985 says little about what is a constitutional right in 1985, much less one in 2023. Indeed, recent cases like *Fulton* and *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), have much to say about the outcome of this case.

***Third***, because *Backlund* quickly addressed clearly established rights to free exercise, the court did not address any free-speech issue or thoroughly analyze any free-exercise one. For example, *Backlund* did not consider whether Washington used individualized assessments or categorical exemptions. But Oregon does both, which triggers strict scrutiny and undermines the State's interests.

***Fourth***, the Backlunds asserted a free-exercise right to physically punish a foster child. But Bates merely seeks to speak consistent with her faith and to refrain from actions that violate her conscience. The State's ability to stop corporal punishment says little about its ability to regulate protected speech. Similarly, the State's interest in *stopping* physical punishment differs from its interest in *requiring* Bates to facilitate controversial medical interventions to avoid uncertain harm. The strict-scrutiny analysis plays out quite differently here.

***Fifth***, *Backlund* supports Bates because it shows that Oregon can make placement decisions for specific children without excluding Bates. In *Backlund*, the agency temporarily removed the foster child from the family because of a conflict between the family's religious beliefs about corporal punishment and that particular child's history of physical abuse. 778 F.2d at 1387. But even in *Backlund*, Washington did not categorically exclude the parents from foster care. Indeed, they were ultimately approved for adoption. *Id.*

If Washington could accommodate the Backlunds, who wanted to physically punish a specific child with a history of suffering abuse, surely Oregon can give Bates the opportunity to adopt some child, especially since Oregon has not proven that Bates' speech and actions cause any harm—either to every child in the system or to any specific child. For example, if a child went by neopronouns and Oregon (incorrectly) thought placing that child with Bates would cause harm, Oregon could consider placing a different child with Bates. That cannot possibly harm the first child and gives a second child the chance to find a loving home.

3

Plaintiff's Supplemental Brief

***Sixth***, because Oregon can tailor placements to avoid conflicts, *Backlund* confirms Oregon's inability to carry its burden at this stage. "[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction[.]" *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022) (citation omitted). Bates has, at the very least, made that colorable showing. Now Oregon has to justify its actions under strict scrutiny. It cannot. For example, Oregon can avoid placements that could present a conflict or match Bates with children of similar views. See Pl.'s Reply in Supp. of Her Mot. for Prelim. Inj. § IV.E (Doc. 32) (summarizing alternatives).[1]

Oregon argues that it need not "compromise its decision-making concerning protection of the children in its custody whenever that protection conflicts with a prospective caregiver's own beliefs about childcare." Defs.' Suppl. Br. 4. Again, this misses the point. In this case, Bates does not challenge the State's discretion to make *individual* placement decisions. But it's something else entirely to argue that the State's exclusionary qualification standards receive no judicial scrutiny whatsoever.

Imagine if a different state used a similar rationale to categorically exclude interracial couples by assuming (as some courts and states used to) that children of interracial parents are "more vulnerable to peer pressures [and] suffer from the

---

[1] Nor can Oregon carry its burden by pointing to Bates' ability to speak and exercise her beliefs elsewhere. *See Texas v. Johnson*, 491 U.S. 397, 417 n.11 (1989); *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939); *contra* Defs.' Suppl. Br. 4. Bates' rights are violated, and she suffers irreparable harm every day she's excluded from the adoption program.

social stigmatization." *Palmore v. Sidoti*, 466 U.S. 429, 431 (1984). Under Oregon's logic, that should be allowed. But that would be illegal (The Multiethnic Placement Act of 1994, 42 U.S.C. §1996b), unconstitutional (*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2161 (2023)), and immoral, *cf. Palmore*, 466 U.S. at 433 ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."). Instead, Oregon can consider race *only* "in the context of an individualized placement decision when a specific child has a special need."[2] That logic should apply here.

Or imagine if state officials excluded same-sex couples from foster care because of a perceived conflict between their sexual orientation and *some* children's religious beliefs. *In re Marriage of Black* is informative. 392 P.3d 1041 (Wash. 2017) (en banc). There, a mother began to identify as a lesbian and subsequently filed for divorce from her husband. *Id.* at 1044. During the child-custody dispute, the trial court held it was in the children's best interests to be placed with the father because of their religious upbringing. *Id.* at 1047–48. But the Washington Supreme Court reversed: "Even if a parent's sexual orientation is contrary to the children's religious values, a trial court may not consider it in a custody determination unless the evidence shows 'direct harm to the children.'" *Id.* at 1050 (citation omitted).

Oregon suggests all these policies are permissible because constitutional protections do not apply to child-welfare policies. That cannot be right.

## CONCLUSION

Oregon seeks unilateral authority to categorically exclude adoption and foster applicants based on their protected speech, religion, and even other protected traits. *Backlund* never considered nor countenanced this argument. Therefore, it is inapposite.

---

[2] https://perma.cc/7HV7-LJJC.

Respectfully submitted this 12th day of September 2023.

| | |
|---|---|
| Rebekah Schultheiss (Millard)<br>rebekah@millardoffices.com<br>OSB #121199<br>PO Box 7582<br>Springfield, OR 97475<br>t: 707.227.2401<br>*Counsel for Plaintiff* | *s/Johannes Widmalm-Delphonse*<br>Johannes Widmalm-Delphonse*<br>jwidmalmdelphonse@ADFlegal.org<br>VA Bar No. 96040<br>ALLIANCE DEFENDING FREEDOM<br>44180 Riverside Pkwy<br>Lansdowne, VA 20176<br>t: 571.707.4655<br><br>Jonathan A. Scruggs*<br>jscruggs@ADFlegal.org<br>AZ Bar No. 030505<br>ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, AZ 85260<br>t: 480.444.0020<br><br>Christiana Kiefer*<br>ckiefer@adflegal.org<br>DC Bar No. 176922<br>ALLIANCE DEFENDING FREEDOM<br>440 First Street NW,<br>Suite 600<br>Washington, DC 20001<br>t: 202.393.8690<br><br>*Counsel for Plaintiff*<br>**Admitted Pro Hac Vice* |

**CERTIFICATE OF SERVICE**

      I hereby certificate that on September 12, 2023, I filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to the following parties:

Deanna Chang
Deanna.J.Chang@doj.state.or.us
t: 503.949.1546
Thomas H. Castelli
thomas.castelli@doj.state.or.us
t: 971.673.1880
Alexander Charles Jones
alex.jones@doj.state.or.us
t: 503.508.2171
Oregon Department of Justice
100 SW Market St,
Portland, OR 97201

      Dated: September 12, 2023

                                                *s/ Johannes Widmalm-Delphonse*
                                                Counsel for Plaintiff

Plaintiff's Supplemental Brief